OF

## THE STATE OF NEW JERSEY.

MAY TERM, 1905.

---

WILLIAM J. MAGIE, ORDINARY.

JAMES J. BERGEN, VICE-ORDINARY.

---

THOMAS WRIGHT, appellant,

*v.*

MARY FLYNN, respondent.

[Submitted June 20th, 1905.  Decided August 10th, 1905.]

1. The appellate court, reviewing a decree admitting a will to probate on evidence appearing in the transcript, should not set aside the findings of the trial court as erroneous, unless clearly convinced of error.

2. On an application for probate of a will, evidence *held* insufficient to require a finding that the will was a fabrication and a forgery.

On appeal from a decree of the Passaic county orphans court.

*Mr. William B. Gourley,* for the appellant.

*Mr. Jacob Willard De Yoe,* for the respondent.

MAGIE, ORDINARY.

This appeal brings in review a decree of the orphans court admitting to probate a paper-writing as the last will of Catharine Wright, deceased. The paper-writing in question purports to be dated July 14th, 1903, and to be signed by Catharine Wright and witnessed by Katie Flynn, a niece of Catharine Wright, and by Max Herrman, who was living in the same house in which Catharine Wright lived, although in a different apartment.

Katie Flynn and Max Herrman were both produced as witnesses and testified in the orphans court. There was no attestation clause attached to the paper-writing, but I deem it clear that if credence is given to their testimony it was, on the day of its date, declared by Catharine Wright to be her last will, and it was executed by her with all the formalities required by our statute to constitute a valid testamentary disposition.

The contention on the part of appellant is that the testimony of these witnesses is wholly unworthy of credit, and that the case shows that they, or one of them, fabricated the paper-writing in question, including the signature of Catharine Wright thereto, and that they have conspired together to foist the same upon the court as a genuine will.

The learned judge of the orphans court, before whom these witnesses testified, reached the conclusion that their evidence was worthy of credence. An appellate court, reviewing the case upon the evidence appearing in a transcript, ought not to pronounce the conclusions reached under such circumstances to be erroneous unless clearly convinced of the error. As I do not find in the case sufficient proof of error to convince my judgment, the decree must be affirmed. For the benefit of counsel, I will briefly state my views on the points argued.

It is abundantly proved that on the day of the date of the

paper Catharine Wright was a resident of Paterson, and that
her niece, Katie Flynn, was living with her, being upon a visit
to her, and that Max Herrman was resident in the same house.
There was therefore an opportunity for the three persons to
have met together, as sworn to by these witnesses.

The attack upon the instrument, and upon the credibility of
the witnesses, is grounded upon indications upon the face of
the writing, alleged to be observable upon inspection of it by
common observation, or by observation directed by and dis-
closed upon the evidence of expert witnesses.

The mere opinions of expert witnesses on handwriting, while
admissible in evidence, and to be considered by the court, ought
not to be permitted to overcome the positive testimony of un-
impeached witnesses. But the argument on the part of appel-
lant in respect to expert evidence is properly presented. The
claim is that such evidence opens to our observation what would
not have been observed without the aid of examinations made
by those who, by practice and experience, have acquired facility
in such observations. I apprehend that this is the most im-
portant function of expert testimony, and the weight and
force of such evidence is dependable upon its exhibiting to our
senses that which our unaided observation would not discover.

To the arguments upon this line the counsel for appellant
added arguments based upon the alleged improbability of the
story of the attesting witnesses.

To make clear my conclusions, it is proper to state that the
paper in question discloses to my observation the fact that the
words "Paterson N Jersey July 14, 1903 I Catharne Wright,"
at its top, and the words "Catharine Wright 93 Frnt St. Pater-
son N Jersey," at the bottom, are in a handwriting different
from that which has been used in the body of the instrument.
Katie Flynn testifies that the words at the top and bottom
above quoted were written by Catharine Wright herself, and
the remainder of the writing, except the signature, "Max Herr-
man witness," was written by her, at her aunt's dictation.

Upon the evidence of the experts, I am able to observe that
the signature of "Catharine Wright," at the bottom, and "Pat-
erson N. Jersey," thereunder, have been originally written with

a somewhat pale ink, and then the lines overwritten with a somewhat darker ink. I am also able to observe what would have probably escaped my observation unless I had been directed to it by their evidence, that in the parts of the paper which Katie Flynn claims to have written many, and perhaps all, of the letters whose form requires them to extend below the line were not written at one stroke. These letters show that the parts below the line are not continuous with the upper parts, but have been added afterward, and Katie Flynn admits that this was so done by her.

The further claim is made, upon the evidence of the experts, that the "Catharine Wright" at the top and the "Catharine Wright" at the bottom of the paper are identical in form, spacing and length, and that the "Paterson N Jersey," at the top, and the same words at the bottom, are not only identical in form, spacing and length, but also are in exactly the same distance from the right-hand edge of the sheet. This is claimed to be observable upon what is pointed out by the experts, and it is argued that this identity leads to the necessary inference that they were not written by Catharine Wright, as claimed, but have been traced from some other single paper on which those words appeared. Two intelligent experts express their opinion that they were so traced, and base their opinions on the extreme improbability of such identical writing.

The complete identity of the "Catharine Wright" at the top with the "Catharine Wright" at the bottom, is not apparent to me. The former omits the "i" in "Catharine;" the latter has the name in full. Nor does my comparison of them disclose them to be absolutely identical in length or spacing. They present close resemblances, but I am not prepared to say that the resemblances are closer than signatures by the same person sometimes present.

The identity of the "Paterson N Jersey" at the top with the same words at the bottom is much clearer, and yet not entirely perfect. Letters with open loops in one are closed in the other. The length and spacing seem to nearly agree, and the distance from the right-hand edge of the sheet is nearly the same in each. But the agreement is not so perfect as to convince my

judgment that they must have been traced from another paper, and not written by Catharine Wright herself, where the claim is in opposition to the testimony of both the attesting witnesses that the words at the bottom were written by Catharine Wright herself.

Nor am I able to give much weight to the criticism directed to the testimony of Katie Flynn, and based upon its improbability. She declares that her aunt dictated to her the body of the will, which is expressed in correct legal phraseology, and that such dictation was made without any paper to guide her aunt. It is urged that Catharine Wright was incapable of such a feat. Letters written by Catharine Wright are in evidence, and they indicate that she was a woman of little education, but yet that she was not incapable of expressing her ideas on paper. But they do tend to render it doubtful whether she had the capacity to dictate off-hand this testamentary disposition. It is in evidence, however, that Catharine Wright had in her possession the will of her first husband, and its provisions are almost identical with those used in this paper. It is argued that Catharine Wright would not be likely to have impressed the words of that will upon her memory so as to dictate them without having the will in her hand, and that it tends to show that Katie Flynn used that will in the fabrication of this paper. But this theory meets with two serious difficulties. In the first place, the will from which it is suggested that Katie Flynn copied the provisions of this paper contained a complete attestation clause. It seems to me well nigh inconceivable that a person using it in preparing a fabrication to be presented as a will would have omitted to append to it a similar clause. In the next place, it seems almost equally inconceivable that a fabricator, having wit enough to use this will as a model, would have failed to testify that her aunt dictated from it, and not from memory. At all events, I am not prepared to say that the improbability of Catharine Wright being able to dictate a will without aid is greater than the improbabilities that confront us on the theory of fabrication from the provisions of that will.

So, the curious and suspicious circumstance in the condition of the parts of the letters below the line in the body of the

paper is urged as highly improbable. The explanation of Katie Flynn, as I understand her evidence, is that, by her aunt's direction, and because the writing was upon paper which was unruled, she (Katie) placed under the paper a ruled sheet, and aligned the lines showing through from the under sheet by another sheet. This obviously prevented her from making the letters perfect when first written, and she declares that she perfected them afterwards. This has given me some trouble as to her credibility, but I cannot deem it forcible enough to reject her evidence, for the theory of forgery encounters another improbability, viz., that a forger would not be likely to prepare a fabricated paper in a condition which would require any explanation, or such an explanation as Katie Flynn has made.

The remaining peculiarity, consisting of the evident retouching or overwriting of the words at the bottom of the paper, remains to be considered. It is claimed by the proponent to be explained by proof that Catharine Wright had been observed to do such overwriting upon words previously written on more than one occasion. This is a possible explanation, and I am not able to say that it does not explain the peculiarity. At least the improbability that the maker of a fabricated will, which she must have anticipated would be presented in court, with the plain prospect of a contest, would have thus retouched or overwritten the forged signature, presents to my mind as much doubt, for both the attesting witnesses say that Catharine Wright did not retouch the words in their presence. The inference must be, if credit is given to them, that the words were retouched afterwards.

If Katie Flynn is believed, the will remained for some time in the possession of the deceased. There was therefore opportunity for her to retouch the letters. If she did do so, I deem it would not invalidate the will if, at the time of execution, there was a genuine signature at the bottom of the paper. Such overwriting, if done by her, would not indicate an intention to revoke the instrument.

Neither of the witnesses thus attacked has been impeached. I do not perceive that their testimony was shaken by the acute and careful cross-examination before the orphans court. Neither

of them has any direct interest in the provisions of this will. The sole beneficiary is Mary Flynn, the respondent, who was a sister of the deceased. She is the mother of Katie Flynn, but she is the wife of a living husband and the mother of twelve living children, so that Katie's interest is remote and small. There seems to be no interest of Max Herrman in the event of this contest.

The judge of the orphans court, who saw and heard the witnesses, declared himself unable to disregard the direct testimony of the attesting witnesses, notwithstanding the expert testimony, and the observations made from the face of the paper, which I have before discussed. I am not convinced that his decision was erroneous.

The decree must therefore be affirmed.